UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| APRIL LINDSEY-EVANS, et al., *individually and on behalf of all others similarly situated,* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:25-CV-363-ZMB |
| NRRM, LLC, *doing business as* CARSHIELD, LLC, et al., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendants NRRM, LLC and American Auto Shield, LLC's Motion to Compel Arbitration. Doc. 11. Given that the arbitration clause in the relevant agreements binds the Plaintiffs in this case, the Court orders the parties to proceed to arbitration under 9 U.S.C. § 2 and stays the instant proceedings pending the completion of that process.

**BACKGROUND**

**I.    Factual Background**

American Auto Shield "develops and administers" automobile service agreements, known as Vehicle Service Contracts (VSCs). Doc. 1 ¶¶ 2–4. These third-party warranties are sold by NRRM ("CarShield"). *Id.* Defendants market themselves as "America's #1 Auto Protection Company." *Id.* ¶ 5.

Plaintiffs are representatives of a putative class who allegedly have been harmed by American Auto Shield and CarShield's failure to honor their VSCs. *Id.* ¶¶ 1, 8–11. The named plaintiffs are April Lindsey-Evans, a citizen and resident of North Carolina, *id.* ¶ 12, along with Brenna Sebek and Kevin Sheehan, a couple who are citizens and residents of Illinois, *id.* ¶ 30. They all purchased VSCs over the phone and gave authorization for agents of CarShield to sign

the VSCs for them. Doc. 31 at 7–11; Doc. 33-1 ¶¶ 6, 10. While the VSCs contain materially similar

arbitration provisions, the wording differs slightly. Lindsey-Evans's contract provides that:

> Any and all claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise, including statutory, common law, fraud (whether by misrepresentation or by omission) or other intentional tort, property, or equitable claims) arising out of, relating to, or in connection with (1) this CONTRACT or any prior contract between YOU and US, and the purchase thereof; and (2) the validity, scope, interpretation, or enforceability of this Provision or of the entire CONTRACT ("Claim"), shall, before any other means of dispute may be pursued, be presented for non-binding arbitration before a single arbitrator.

Doc. 33-1 at 49. Likewise, Sebek and Sheehan's provides that:

> If any legal dispute between YOU and either the ADMINISTRATOR, the OBLIGOR, or the SELLER (including any affiliated individual or entity) relating to this CONTRACT (including the sale or performance of this CONTRACT) (a "Dispute") is not resolved by the Claim Review Escalation process, YOU, ADMINISTRATOR, OBLIGOR, and/or SELLER may agree to participate in mediation of the Dispute as described below. If any Dispute is not resolved by the Claim Review Escalation process or mediation, or if the parties forego those options, that dispute shall be resolved solely by arbitration. . . . All Disputes must be resolved solely through arbitration[, and] . . . YOU agree that YOU shall not initiate or participate in any class arbitration proceedings, class action lawsuits, or any other type of representation or collective proceeding involving a Dispute.

*Id.* at 84–85. Both contracts also contain similar class-action and jury-trial waivers, *id.* at 49–50, 85,

and they allow buyers to cancel the contract within one month for a complete refund. *Id.* at 51, 94.

## II.    Procedural Background

Plaintiffs brought this action in March 2025. *Id.* Two months later, Defendants filed their

Motion to Compel Arbitration and to Strike. Doc. 11. Defendants later sought leave to submit

Plaintiffs' VSCs, Doc. 21, which the Court granted as unopposed, Doc. 22. Yet, in response to

Defendants' motion, Plaintiffs disputed the authenticity of the VSCs. *Id.* at 6–7.[1] Along with its

timely reply, Defendants re-attached the VSCs with declarations, transcripts of sales calls, and other

evidence of authenticity. Docs. 33, 33-1. Apparently satisfied, Plaintiffs raised no further concerns.

---

[1] The Court notes that these authenticity issues could have been avoided if Plaintiffs had simply attached the VSCs to their Complaint, which they failed to do despite apparently having copies that allowed them to include verbatim excerpts.

**LEGAL STANDARD**

The Court's analysis is guided by the overarching presumption toward arbitration embodied in the Federal Arbitration Act (FAA). 9 U.S.C. § 2 ("A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). The Eighth Circuit has recognized that "the FAA establishes a 'liberal federal policy favoring arbitration agreements.'" *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). As such, "[a] motion to compel arbitration must be granted if a valid arbitration clause exists which encompasses the dispute between the parties." *M.A. Mortenson Co. v. Saunders Concrete Co.*, 676 F.3d 1153, 1156–57 (8th Cir. 2012) (internal quotation marks omitted). A party seeking to compel arbitration has the burden to prove a valid agreement to arbitrate exists. *Ballou v. Asset Mktg. Servs.*, 46 F.4th 844, 851 (8th Cir. 2022). But if a valid agreement exists, then "the party resisting arbitration bears the burden of showing [] that the arbitration provision is invalid." *H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, 76 F.4th 1093, 1099 (8th Cir. 2023) (citations omitted).

If a dispute about the validity of the arbitration agreement emerges, courts look "to state contract law to determine whether an enforceable arbitration agreement exists." *M.A. Mortenson*, 676 F.3d at 1157 (internal quotation marks omitted). In conducting this analysis, a court may consider materials "embraced by the complaint" even if not attached to the pleadings, as long as no party questions the materials' authenticity. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Further, courts may consider evidence outside the pleadings, in which case they must "treat[] the motion akin to a motion for summary judgment, viewing the record in the light most favorable to the nonmovant." *Duncan v. Int'l Mkts. Live*, 20 F.4th 400, 403 (8th Cir. 2021).

3

**DISCUSSION**

Given that Plaintiffs have not questioned the authenticity of the VSCs post supplement and do not dispute that the arbitration provisions are broad enough to encompass their claims, the only issues regarding arbitrability are the validity and enforceability of the arbitration agreements. Plaintiffs contend that the agreements were oral contracts and that the arbitration provisions of the VSCs are impermissible after-the-fact modifications. *Id.* at 8–11. They also argue that the arbitration clauses are unconscionable and thus unenforceable. *Id.* at 11–13. Plaintiffs are incorrect on both fronts—the arbitration agreements are valid and enforceable.[2]

## I.       Validity of the VSC Arbitration Provision

The parties agree that both North Carolina and Illinois[3] recognize the validity of oral contracts and that the Plaintiffs each entered into such an agreement here. *See Kornegay v. Aspen Asset Grp.*, 693 S.E.2d 723, 730 (N.C. Ct. App. 2010); *Burkross v. Thompson*, 2015 WL 6514914, at *7 (Ill. App. Ct. 2015). They part ways, however, as to the validity of the VSCs. Specifically, Plaintiffs contend that the VSCs—or at least the arbitration provisions—were an improper, after-the-fact modification of the oral agreements because North Carolina and Illinois require that terms like an arbitration clause be clearly disclosed to form part of any oral contract. Doc. 31 at 9–11. In part, Plaintiffs contention that an oral contract exists is premised on the fact that none of the named Plaintiffs signed the VSCs, instead having authorized a sales representative to sign them over the phone.

---

[2] As alternative relief, Defendants ask the Court to strike the class allegations and jury demand. Doc. 12 at 8 & n.4. But the Court need not reach that issue, given that it is compelling arbitration and the conditional nature of Defendants' request.

[3] The parties agree that the home state law of the Plaintiffs applies when determining validity of the arbitration clauses contained in the VSCs between the Plaintiffs and CarShield. Doc. 31 at 7–11; Doc. 33 at 3 n.2; *Cooper v. Endurance Dealer Servs.*, 2025 WL 3281681 (N.D. Ill. Nov. 25, 2025) (assuming for purposes of a motion to compel that the customer's home state law applies given the parties' agreement and collecting relevant choice-of-law precedent).

It is undisputed that Lindsey-Evans did not sign the agreement herself. The authenticated VSC shows that Javier Clairborne, the sales representative who sold Lindsey-Evans the VSC, signed the contract as a "phone authorized agent." Doc. 33-1 at 34. The transcript of the sales call also makes clear that Clairborne was authorized to "sign the contract and process [Lindsey-Evans'] initial payment[.]" *Id.* at 24. Similarly, Sheehan and Sebek's VSC is unsigned, though the sales call transcript again confirms that Sebek authorized the sales representative to sign the contract on his and Sheehan's behalf. *Id.* at 66 (Sebek authorizing the sales representative to "sign the contract and process that initial [payment]").

Despite the lack of signature, the named Plaintiffs are still bound by the arbitration provision because they are unequivocally parties to the full VSCs in question. Both North Carolina and Illinois courts have recognized that arbitration agreements do not require a signature to be enforceable. *See Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879, 882 (N.C. Ct. App. 1999) ("[Arbitration] agreements need not be signed."); *Landmark Props., Inc. v. Architects Int'l-Chicago*, 526 N.E.2d 603, 606 (Ill. App. Ct. 1988) ("[A] party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it."). As noted above, both Lindsey-Evans and Sheehan and Sebek consented to a sales representative signing the VSC on their behalf, and further, an affidavit from CarShield's COO notes that CarShield sent the named Plaintiffs a digital copy of the VSC the same day they purchased the contract and also mailed Sheehan and Sebek a physical copy three days after their purchase. Doc. 33-1 at 2–3. That same affidavit notes that Sheehan and Sebek continued to make payments on their VSC for approximately 8 months, and Lindsey-Evans made payments for 4 years, until they opted out through nonpayment. *Id.* at 2–3. Another affidavit from American Auto

Shield LLC's President notes that Lindsey-Evans submitted claims under the VSC at several points over the course of her contract. Doc. 33-2.

Under North Carolina law, a court may "look beyond the writing to determine if mutual assent to the terms of the [VSC] existed." *Howard*, 516 S.E.2d at 882. Lindsey-Evans was given actual notice on the sales call that the sales representative was signing a contract on her behalf, assented to that action. The sales representative also advised her that she would receive "the actual contracts" and encouraged her to call customer service with any concerns that she may have. Doc. 33-1 at 23–24. Most importantly, the terms of the contract were made available to her by email immediately after the signing, with a one-month period in which to peruse the contract and cancel for a full refund. Instead, Lindsey-Evans continued to make payments to CarShield, and utilized their services on multiple occasions. Doc. 33-2. It cannot be a surprise to Lindsey-Evans that she is now bound by the contract she allowed to be signed on her behalf.

The analysis is even more straightforward for Sheehan and Sebek. Despite Plaintiffs' complaint that they were not made aware of the arbitration provision, Doc. 31 at 10–11, the sales call transcript clearly shows that the representative disclosed the presence of an arbitration provision, Doc. 33-1 at 66 ("You can see the contract for your coverage, exclusions, **and arbitration**, and of course your labor times and rates are just subject to your standard industry repair guides.") (emphasis added). And identically to Lindsey-Evans, the VSC also included a provision, disclosed and fully discussed with the named Plaintiffs on the sales calls, which allowed them to cancel the contract within the first month for a full refund. In a seminal contracts case, the Seventh Circuit addressed a very similar factual scenario and held an arbitration clause included in a list of terms shipped with a customer's computer order—which included a very similar 30-day refund clause—was a part of the parties' agreement. *Hill v. Gateway 2000, Inc.*, 105 F.3d

6

1147, 1147–49 (7th Cir. 1997). The court explained that it would be impractical to require sales representatives to read legal documents to customers before completing a sale and that "oral recitation would not avoid customers' assertions (whether true or feigned) that the clerk did not read term X to them, or that they did not remember or understand it." *Id.* The Court finds this reasoning persuasive and holds that the named Plaintiffs accepted the terms of the contract, including the arbitration clause.[4]

## II.    Unconscionability

Alternatively, Plaintiffs assert that the arbitration clauses are unconscionable. Doc. 31 at 11–13. Both North Carolina and Illinois look at whether a provision is procedurally or substantially unconscionable. North Carolina requires proof of both elements, whereas Illinois requires only proof of one. *See, e.g.*, *Tillman v. Com. Credit Loans*, 655 S.E.2d 362, 370 (N.C. 2008) ("A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability."); *Zuniga v. Major League Baseball*, 196 N.E.3d 12, 20 (Ill. App. Ct. 2021) ("A contract term can be invalidated on the basis of 'substantive' unconscionability, 'procedural' unconscionability, or a combination of both."). The Plaintiffs fail to meet their burden and show unconscionability under either standard.

### a.   *North Carolina Contract Law*

Plaintiffs argue that the presence of the arbitration clause in a "take-it-or-leave-it" contract of adhesion like the VSCs meets the test for procedural unconscionability. Doc. 31 at 12. North Carolina courts have held that procedural unconscionability "involves bargaining naughtiness in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power."

---

[4] This Court's conclusion is buttressed by, but in no way dependent on, *Cooper v. Endurance Dealer Servs.*, which rejected many of the same arguments Plaintiffs have advanced regarding the enforceability of an arbitration agreement in written contract memorializing the purchase of a VSC over the phone. 2025 WL 3281681 (N.D. Ill. Nov. 25, 2025).

*Tillman*, 655 S.E.2d at 369–70 (internal quotation marks omitted). Of these three factors, unfair surprise and the inequality of bargaining power are the most relevant, given the fact that Plaintiffs did not receive the contracts before they agreed, and because they are ordinary consumers while the seller is a sophisticated corporation. But CarShield's affidavit avers that the Plaintiffs were emailed the VSCs the day they signed up. Doc. 33-1 at 3–4. That fact alone militates against an inherent inequality in bargaining power, particularly considering Lindsey-Evans' ability to cancel the contract after examining it and receive a full refund for up to 30 days. Further, Lindsey-Evans' VSC instructs the reader in bold font to "[r]ead the following Conditionally Binding Arbitration Provision [] Carefully. It Conditions Certain Rights, Including YOUR Right to Obtain Relief or Damages Through Court Action." *Id.* at 49.[5] When combined with the refund period, those facts further counsel against finding unfair surprise or lack of meaningful choice and place this case in direct opposition with cases like *Tillman* where the parties were "rushed through [] loan closings" and were prevented from fully understanding the impact of what they were signing. *Tillman*, 655 S.E.2d at 367. Finally, Plaintiffs also argue that the lack of an opt-out clause for the arbitration is indicative of procedural unconscionability, but the Plaintiffs have not identified— and Court has been unable to locate any authority—concluding that a lack of an opt-out clause is *per se* procedurally unconscionable.

Substantive unconscionability requires a showing of "harsh, one-sided, and oppressive contract terms." *Id.* at 370. There is no such showing here. Both parties are bound by the arbitration clause, and as such, the agreement is not one-sided. *Raper v. Oliver House, LLC*, 637 S.E.2d 551, 556 (2006) (no unconscionability where the "provisions of the agreement to arbitrate are mutual

---

[5] This also distinguishes the facts here from *Supak & Sons Manufacturing Co. v. Pervel Indutriess*, as the arbitration agreement there was contained in "dull gray ink in fine print . . . in the lower right-hand corner." 463 F. Supp. 177, 179 n.1 (E.D.N.C. 1978).

and apply equally to all parties."). Additionally, the argument that mandatory arbitration of claims is unconscionable cuts against North Carolina's stated goal to favor arbitration and freedom of contract, even when it allows people "to enter into contracts that actually may be unreasonable or which may lead to hardship on one side." *Westmoreland v. High Point Healthcare Inc.*, 721 S.E.2d 712, 722 (N.C. Ct. App. 2012) (citation omitted). As such, Lindsey-Evans fails to show that the agreement was substantively unconscionable.

### b. *Illinois Contract Law*

Sheehan and Sebek also fail to meet the criteria for unconscionability in Illinois. Procedurally, the fairness of their VSC is even more readily apparent than Lindsey-Evans', with the "Contract Quick Reference Guide" at the front of the VSC explicitly calling out a "Alternative Dispute Resolution and Class Action Waiver." Doc. 33-1 at 72. Indeed, under a subheading entitled "What To Do When You Receive Your Contract," it implores the reader to "Read the entirety of this CONTRACT." *Id.* at 75. Further, Illinois law does not consider contracts of adhesion containing arbitration clauses to be procedurally unconscionable, and once again, the one-month refund provision cuts against any assertion that the arbitration clause was "so difficult to find, read, or understand that a party cannot fairly be said to have been aware he was agreeing to it." *See Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264 (Ill. 2006); *Sherrier v. Alliant Credit Union*, 2022 WL 4592630, at *14 (Ill. App. Ct. 2022). And once again, Plaintiffs' cited case, *Zuniga v. Major League Baseball*, is distinguishable. 196 N.E.3d 12 (Ill. App. Ct. 2021). There, the arbitration provision was incorporated by reference and could be found only by accessing a website or requesting it from an administrative office. *Id.* at 26. Here, it is undisputed that Plaintiffs received an electronic copy of the VSC emailed to them the same day they signed up for the contract, and that they did not take advantage of the one-month refund period.

Substantive unconscionability is also inapplicable here for largely the same reasons as above. Illinois courts "have recognized consistently the public policy favoring arbitration." *J & K Cement Const. v. Montalbano Builders*, 456 N.E.2d 889, 902 (Ill. App. Ct. 1983). Alleging that the clause is substantively unconscionable simply because it is mandatory, cuts against the stated goal of favoring freedom of contract and arbitration. Accordingly, the VSCs are not unconscionable under either North Carolina or Illinois law, meaning that the Court can and will enforce them here.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendant NRRM's [11] Motion to Compel Arbitration and **STAYS** all proceedings until the arbitration is completed.

So ordered this 6th day of March 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE